Call our third case of this morning, number 18-1838, League of Women Voters of Pennsylvania et al. v. The Commonwealth of Pennsylvania et al., Mr. Haverstick and Ms. Theodore. Good morning, Your Honors. May it please the Court, my name is Matt Haverstick. I represent President Pro Tem of the Pennsylvania Senate, Joe Scarnati. I'd like to ask the Court for two minutes of rebuttal time. That's fine. Thank you. Your Honors, there are three issues raised in our appeal. Two of those I think are aptly and appropriately and concisely dealt with in our brief. Those are the issues of the propriety of the award of fees at all, and then if fees were appropriately granted, the amount of those fees. Certainly, I'll entertain questions from the Court on those arguments, but I'd like to rely on our papers for those two portions of our appeal and discuss what I believe is really the singular issue for us as an institutional matter, and that is the out of no personal liability. Exactly, Your Honor. Exactly. You're familiar with the record. You're familiar with the order below. President Pro Tem Scarnati was sued in this matter in his official capacity, and not as citizen Joe Scarnati, not even as Joe Scarnati qua Senator Joe Scarnati. He was sued in his official position and in his officer capacity because that is the only way, as we all know, in the Commonwealth that certain types of relief may be obtained from the government, in this case, the General Assembly, for certain types of litigation in which you're seeking to declare statutes unconstitutional or you're otherwise attempting to compel some sort of legislative action, you name the Speaker of the House in his representational capacity and the President Pro Tem of the Senate. Let's just get some facts out of the way. When this complaint was filed and how soon thereafter did Mr. Scarnati move or remove the case to federal court? It was into the litigation, triggered, as I believe the court knows, by the entire circumstance of these cases, and I know that there were two in federal court, one pending in Commonwealth court at the time, and then in Supreme Court, and then sent back to Commonwealth court for fact-finding. They're unique in the annals of the 33rd. When was it removed? It was removed in late October, early November of 2017. And then when was it sent back, or in effect, way abandoned and sent back to state court? Within about a day or so. On Senator Scarnati's own motion, because there was a disagreement in the papers about whether the Speaker of the House had given consent or whether he had withdrawn consent, once it became clear that that was an issue, Senator Scarnati on his own initiative withdrew and moved to remand. Was that the precipitating event? For Senator Scarnati's... When Mr. Terzai said, I did not consent? Yes, that was the event that caused Senator Scarnati on his own initiative to move to release back down to state court. That was one party that we believe was not nominal and whose consent was required for purposes of removal in the first place. And when that apparently was initiated, then we understood we really couldn't maintain a removal action. The case was really live on the docket for about 24 hours, give or take. And Senator Scarnati was sued. He wasn't sued in his personal capacity. He couldn't have been sued in his personal capacity. And all along the way, there was never any suggestion that Senator Scarnati or Speaker Terzai or the governor or the secretary of state, and that actually is an important actor in this drama, were in these cases for any reason and on any basis other than their official representative capacity. I mentioned the secretary of state because that person changed during the pendency of alleviation. It started out as one person. That person stepped away from the office. That person didn't stay on the docket in the caption. His name was substituted for the new secretary of state. Why? Because the old secretary of state personally was not named. The League urged at one point that the state shouldn't have to foot the bill for this, that it was really Senator Scarnati and it would be unfair to have the state have to foot the bill. Was there any other argument or, I guess, argument or issue raised as to whether personal capacity versus official capacity, whether the responsibility was one or the other? Was there anything in any of the papers or anything in Judge Bailson's colloquy with parties? No. And the closest I think that League of Women Voters came to was a suggestion that there was a request for joint and several liability in their fee application, but not joint and Scarnati, President Pro Tem. Bluntly, Your Honor, had that issue been, had that issue materialized at any time before any of us saw it in the order, I think you would have seen an institutional response from both parties and from multiple branches of government. Because let's think about the significance of that act. Joe Scarnati as President Pro Tem, and you can call him President Pro Tem, it can be any President Pro Tem, it can be the governor, it can be the Chief Justice of the Pennsylvania Supreme Court. They have constitutional obligations to do what they are required to do constitutionally for their legislative or executive or judicial bodies. And they have to take legal positions to do those things. The effect of without notice and in a punitive way, assessing fees and costs against an individual who is charged by our state constitution. 1447C says that you can, fees can be assessed. Isn't that notice enough? Sure. For a party who's in the case. Pretend it's not Joe Scarnati who was named in Judge Baleson's opinion. Pretend it was Jay Corman. If Judge Baleson went through his opinion and at the end said, I assess this against Jay Corman, I don't think we'd be having this conversation. Jay Corman's an alien to that litigation. He wasn't a party. In the same way, Joe Scarnati, in the capacity in which he's being required to pay, was not a party to that case. And that's what the jurisdiction... You're relying on Kentucky versus Graham primarily. I am. Can I ask you, do you contest the finding that there was no objective, reasonable basis for removal? We do. We think there was a reasonable base for removal. And what was that? One, the unique situation, legally and factually, occurring in the Commonwealth at that time. It is unprecedented, as far as I know, in the Third Circuit in Pennsylvania, that in the midst of an unprecedented three-way legal challenge to federal congressional districts, that there was a special election that was going to be held in the midst of that fight. And there was going to be a dispute over whether that election was going to run under the challenge boundaries, the new boundaries, when it would be held. You're honest, it hasn't happened. That may alone be enough to make it reasonable. You're saying that the constitutional nature of the redistricting, etc., etc., gave rise to a basis for removing that? That, and a good faith and a reasonable extension supported by, understandably, some jurisprudence that's not binding on the Eastern District of Pennsylvania, but on the Third Circuit, but at least has a factual predicate in other judicial districts throughout the country, where there have been attempts to expand, that have been And I don't want to dwell on this too much because the papers are far more articulate on this than I am, but I'll answer your question. An objective, reasonable basis doesn't have to be a sure winner. And it certainly doesn't mean it can't be an untested or novel legal theory. Removal cases and the fee imposition, whether it's for Senator Scarnati in his are not designed to be punitive in that they're not designed to chill your good faith attempts to extend the law. And wrapping back into the argument with respect to Senator Scarnati's personal capacity, you can see that you can see the chilling effect that a ruling like the court below would have on state officials charged with making important decisions about the Constitution. If they're afraid that they're going to be held personally liable for decisions that they are constitutionally required to make in a litigation context or any other one, they're going to be chilled. They're not going to make the decisions that the Constitution may require. There was no finding of bad faith in this case. There was not. But what if there had been? Would that change any of the analysis? I can't say it might not, Your Honor. I can't say that it might not. If there had been a finding of bad faith, I think that I think we'd have to know what the bad faith was. But and to your point, there was no there was specifically no finding of bad faith. The judge went out of his way to say there was no finding of bad faith. That has not been appealed. That is the law of the case. The judge went out of his way to say that there was no bad faith by Senator Scarnati or anyone else in attempting the removal. It was a litigation decision that the court ultimately disagreed with and found to be unreasonable, but didn't think was done for any sort of bad motive or a pernicious reason. The judge viewed it as a litigation choice. Your Honor, unless you have any more questions about the matter, I'll reserve my time. Thank you. Theodore. I'm Elizabeth Theodore on behalf of the plaintiffs in the underlying state court litigation, the League of Women Voters and the 18 individual Pennsylvania voters. How can we find that Senator Scarnati acted in bad faith when the district court declined to make that finding? Your Honor, we argued in the district court. Well, first of all, let's take a step back. The district court did not find that there was no bad faith. What the district court said was I'm not deciding whether there was bad faith. The district court said there was no finding of bad faith made. There was no finding of bad faith made. We think the record is clear enough. This court can affirm on any basis in the record. We think the record is clear enough to support a finding of bad faith by this court. But of course, if the court thinks that bad faith is the requirement for imposing fees on Senator Scarnati personally, then the court could certainly remand to give the district court a chance to make that finding. And I think what's important is what was obviously motivating the district court. And this is why we requested the imposition of fees on Senator Scarnati and his counsel. When did you make that request? In our initial fee petition, in the conclusion, we said to avoid putting the burden of these fees on the taxpayer, the court should impose the fees on Senator Scarnati and his counsel jointly and separately. And the district court clearly understood us to be asking for personal liability. And that's because if the fees have been imposed jointly and separately on Senator Scarnati in his official capacity and his counsel, the taxpayer would have had to bear the burden for those fees. And, you know, you should ask Mr. Haberstick, but I think it's fairly clear. And I think the district court understood that if what he had done was imposed jointly and separately on Senator Scarnati officially, the state would have paid those fees. And the district court didn't want that. And that makes perfect sense because the whole purpose of the fee shifting provision in 1447C is to deter objectively unreasonable removals. And in this case, it's hard it's hard to conceive of a case where the removal was more objectively unreasonable, more frivolous on so many different levels than the removal in this case. Why don't you take them off then? Sure. Excuse me. So the first and controlling case law established that Senator Scarnati lacked unanimous consent, which is required under 1446, and this issue with the consent of Speaker Terzai. I thought it was that he thought he had it. So. Oh, I'm sorry. No, no. So Senator Scarnati thought he says he thought that he and there's a factual dispute about this. He says he thought he had the consent of Speaker Terzai. But there is no dispute. There were seven official defendants in this case, and there is no dispute that he lacked the consent of four of them. The governor, the lieutenant governor, the secretary of the Commonwealth and the commissioner of elections. How many of those four were nominal? None. None, Your Honor. And case law from this court and from the Supreme Court makes clear that indispensable parties cannot be nominal. And Senator Scarnati had told the state court a month earlier in a finding in a filing that I urge you to read that Governor Wolf was an indispensable party. And as the district court correctly found, his his removal was simply blatantly inconsistent with that filing. He went on and on in that filing about how indispensable the government, the governor was, how he had unique interests. And I don't think you could find a single court in this country that has held that state election officials who are administering an election under a law that we're asking, we're saying is is unconstitutional. We're seeking an injunction preventing them from running the election under that law. But those aren't nominal defendants. They could have been the only defendants in the case. So. So the the Speaker's issue is sort of a sideshow. This this was clearly objectively unreasonable on that ground from the beginning. It was also objectively unreasonable because the removal was untimely. You asked about the dates of the removal. We filed our complaint on June 15th. This was removed on November 14th. And the notion that the writ of election was an other paper that triggered a new removal deadline is ridiculous. The writ of election was no more another paper than a box score from this weekend's Sixers game. It just had nothing to do with the case. We were not seeking to change the districts for the special election. That was completely clear from our papers, which said that we were seeking to change the districts for the next primary and general election. That was completely clear in the filing. We had made seeking extraordinary jurisdiction in the Pennsylvania Supreme Court. And even putting that aside, I mean, this court held in the case that other paper only refers to documents within the case. So it was it was completely unreasonable for us for that reason as well. I'm happy also to talk about the fact that there was no federal subject matter jurisdiction, because at best, this issue about the special election, which, again, just as a factual matter, had nothing to do with our case. But at best, it would have provided a federal defense. And Senator Scarnati hasn't even responded to that issue in his reply brief. So in terms of the decision to impose the fees on Senator Scarnati personally. This the Supreme Court held in Harlow that when an official is acting in his official capacity, he can nonetheless be held personally liable for that misconduct if it's objectively unreasonable. And that's exactly the standard that we're asking this court to apply here. That's what the district court did in this case. And this court held in Harlow that where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate. And Harlow held that. So, you know, Mr. Haversick concedes that if the district court had found bad faith, that would have supported the imposition of personal liability on Senator Scarnati. But what the Supreme Court held in Harlow is that litigating the subjective bad faith or good faith of government officials is costly. It requires distracting trials. It deters people from government service. I think it implicates separation of powers concerns to ask federal courts to be saying that state court officials are litigating in bad faith. Well, they're litigating a federal court. I mean, there has to be some authority over them, right? Oh, I agree 100 percent, Your Honor. And I think as I say, I think that this court or the district court should make a finding of bad faith. If this court holds that that's the standard that's required to impose fees on Senator Scarnati personally. But what Harlow said is that, of course, there's got to be a level of government misconduct of official misconduct before you impose fees on someone personally for their official acts. But that the standard of misconduct that's applicable should be whether the conduct was objectively unreasonable. That's what Harlow said, that it should be objectively unreasonable, not bad faith. And, you know, that's that rationale, I think, lines up perfectly with the rationale for fees under 1447C. What the Supreme Court said in Martin is that the point is to deter removal as a method for delaying litigation, imposing costs on the plaintiff, which is exactly what happened here. And the way to deter state officials. Did Harlow say even though they're sued in their official capacity, if it was objectively unreasonable, they can be sued in their personal capacity? No, Harlow didn't address that issue. All right. So you still have to get over Kentucky versus Graham, don't you? Well, the Kentucky versus Graham is a case. It's a completely different case from this because it's a case involving the fee statute under Section 1988. And under Section 1988, fee liability runs with merits liability. And so the notion is you can only get fees against the party that you prevailed against in litigation. But we're not seeking fees against Senator Scarnati on the ground that we prevailed against him in the state court litigation in his official capacity. We're seeking fees on the ground that he and he alone took took this step. He said he's a non-party to the litigation. He personally. That's Kentucky versus Graham stands for that proposition, does it not? He is a non-party to the litigation, but he personally engaged in conduct that's attributable to him by removing the case. And I think it's important to note that. Then you get into the bad, the need for bad faith, right? Without bad faith, he is a, you cannot get fees against him as a non-party, can you? We disagree with that, Your Honor. And I point you actually to the footnote in the Hutto versus Finney case. And Hutto is a case that it's under 1988, but it certainly acknowledges that officials can be liable in their personal capacity. But the reason it says bad faith is what it does is it ties the standard for shifting fees based on litigation misconduct to the standard for shifting fees based on qualified immunity. And it cites a case called Wood versus Strickland for the bad faith standard. But Wood versus Strickland is then overruled five years later or thereabouts in Harlow. So Hutto really supports our argument here because Hutto was saying that the standard for imposing fees on somebody personally, the wrongfulness standard should be the same as the standard in the qualified immunity context. And that's what we're saying here. How do you assess fees against Scarnati personally? Don't you have to give him some type of more notice than a 1447C deemed notice? I don't think it's deemed, Your Honor. I mean, as you pointed out, I mean, 1447C is a statute that Congress said imposes fees against litigants. And we specifically asked in our conclusion for the fees to be imposed on him to avoid imposing them on the taxpayer. And the only reasonable way to understand that is as a request for the fees to be imposed against him personally. The case that you cited in your motion for fees, where you asked for joint and several liability, was Baldas versus members of Wisconsin government accountability. Why is that case on point? It dealt with the attorneys. Yes, Your Honor. So that case. And it didn't say anything about personal liability. It did not, Your Honor. And the reason for that is because the defendants, or they were actually third parties, but the parties at issue in Baldas were entities. They were the State House and the State Senate. So there wouldn't have been a possibility of imposing the fees on anybody in their personal capacity. But the court in that case, what the court said was, we don't want to impose costs on the taxpayer for litigation misconduct. And in that instance, it was some discovery misconduct. So it decided to impose them on the counsel. So we think it supports the notion that in this kind of case, it was also an election-related case, that in this kind of case, when there's litigation misconduct, you shouldn't impose it on the taxpayer. And, again, I think what's sort of important to think about here is Pennsylvania taxpayers have already paid millions of dollars to defend this map. And that's fine. But they shouldn't also have to pay for Senator Scarnati's abuse of the litigation process. And the deterrent value of 1447C, which is specifically aimed at deterring frivolous removals for the purpose of delay, will evaporate if public officials can't be held personally on the hook for this. You know, for example, nothing would have stopped Senator Scarnati from removing this case again the day before trial if there weren't the possibility of personal liability. So it's critically important that the court hold that official defendants who abused the removal power be held to account. And that just doesn't happen if the taxpayers have to bear the cost. Is this the day before trial? This was not. This was the day before our pretrial conference. But what I'm suggesting is that he – I thought the hearing was set up within the next month or something like that. That's right. So – right. What about the chilling effect that this would have? Someone in their official capacity is dealing with this situation, which is, granted, a very unique and novel situation that could involve claims of, you know, what's going on here is unconstitutional, et cetera, et cetera. Granted, the procedures were not followed. But are we really going to say to people in their official capacity when they're sued that, you know, if they make a misstep, they're going to be sued personally? It's a lot. I mean, Hutto said that you want to make sure that you don't do something that causes a state official to act later on with undue timidity. And then Harlow v. Fitzgerald, which comes after Hutto, specifically addresses this issue. It specifically addresses the question of whether bad faith or objective unreasonableness should be the standard for imposing fees on people in their personal capacity. And it said that the right balance is objective unreasonableness. And it says that because where an official could be expected to know that conduct would violate statutory constitutional rights, he should be made to hesitate. So the timidity here would not be undue. And, again, this wasn't a close call. The notion that the writ of election supported a removal in this case was completely frivolous, completely made up. I mean, he knew that we weren't trying to. That's pretty weak. I agree. He knew that we were not trying to get this, to shift the special election. Before you sit down, let me ask you a couple. Does Arnold and Porter bill for its Westlaw research? It is a standard chargeable cost. It's on the list of chargeable costs that we send to our commercial clients at the beginning of litigation. And when you do a pro bono, when it does a pro bono case, does it typically bill for junior associates? Well, when we do it. I mean, obviously it's pro bono. But the point being, when are fees written off for junior associates in their first year or so? I mean, we would bill. I can promise you this. All of the fees that we put on our fee request in this case, we would 100 percent have billed to a commercial client. And if you have a situation like this where there's a frivolous removal that's threatening our entire litigation strategy and 10 attorneys worked through the night to get that case back in state court, you can bet our commercial clients would have paid for that. But in any event, you know, Judge Baleson reduced the fee request by 20 percent. And that is clearly takes care of any any issue at all. Thank you very much. One of the questions I was going to ask you before is, how can this theater brought it up? How in the world can you say that the governor is nominal when just prior to that you insisted he was indispensable? Well, I didn't insist it, but nobody did it. You know, I think here's the answer I have for the court. I thought about this when I came in and perhaps it's an easier concept for some of us to grasp. If you've done a significant amount of litigation for and against the Commonwealth, as I have both in this courtroom, but primarily in Commonwealth Court and Supreme Court, the conceptual and intellectual difference between the two concepts, nominal and indispensable, in governmental litigation in the Commonwealth is not that difficult. Our captions are littered with state agencies and state actors in Commonwealth Court and then up to Supreme Court who are there simply because at some point along the chain they have to do a ministerial act. And that's just the pleading practice in Commonwealth Court. It doesn't mean they actually do anything. And in reality and again, I know this because this is real. But aren't the optics really bad? Well, I don't know about the optics, Your Honor. I'm probably the wrong person to ask about that. But you're talking about the political realm. So people in the political realm do understand optics. Well, I'm sure they do. But if we're talking about the political realm, then it sounds like we're talking about whether this might be a political question. No, no. If you say X and then later on you say no, not X, just the opposite of X, it no looking too good. Well, I don't think I don't think it's X and not X. I think it's X and Y. The public and the court. Indispensable and nominal. Indispensable or not. Indispensable. I beg your pardon. Nominal means not indispensable. Well, actually, to me, nominal and indispensable have different conceptual meanings. Again, that we see and we pled in this case and it's in our papers. I grant that it is novel. I grant that it is not optimal from a public perspective. But I think there's a real legal difference. And I don't think it's frivolous to try to point out that difference. In fact, and I'm not the only person who says so. I think there's a case in the Northern District of New York that makes exactly the same point, that in that case, its governor in a redistricting fight was a nominal party because they didn't care about the particular issue there. So for removal purposes, they were nominal. Back up, Your Honor, because one or two broader points I want to make. I find it, if we're talking about perception and incongruity, I don't understand how, on the one hand, these issues were so frivolous, were such a two-foot putt, were so patently and obviously bogus, that it took 10 lawyers 80 hours and I don't know how much in fees after it was reduced down to $50,000 to do. What was the purpose of removing to federal court? Your Honor, Senator Scarnati and Pro Tem Scarnati has an obligation. And this was actually the second point I was going to make about taxpayer dollars. What was the purpose of removing to federal court? The purpose, Your Honor, was to try to make this difficult litigation proceeding in three courts more efficient. That is a concern about which Pro Tem Scarnati has to abide. That is, is it efficient for the taxpayers of the Commonwealth of Pennsylvania to litigate two cases in federal court, one ping-ponging back and forth between Commonwealth and Supreme Court? They all are asking for the exact same relief. They all are invoking constitutional provisions. In Senator Scarnati's judgment as Pro Tem of the Senate and as an institutional leader charged for that body, the whole body, with trying to preserve Commonwealth dollars, a more efficient way to solve this problem is to try to get it in as few of courts as possible. That is a legitimate state basis to try to remove. It's a legitimate basis to justify a good faith attempt to make the litigation more efficient. It didn't work out. We're not here to tell you it necessarily should have worked out. I think it should have, but that's not the point. The point is the man who made that decision was the Pro Tem of the Senate of Pennsylvania, not Joe Scarnati, the citizen. And Joe Scarnati, the citizen, didn't know until the day he got that opinion that he was going to be expected to be called to account in any way other than the ballot box for the decisions of Joe Scarnati, the Pro Tem. And as I think you noted, there are probably real due process concerns with anything that would impose liability on a party who isn't in a litigation and just wakes up one morning and has been teared by Sinterra. Thank you very much. Thank you. Thank you to both counsel for being with us.